Ayres v. The Home Insurance Company.

---

AYRES v. THE HOME INSURANCE COMPANY.

21   185
139   208

1. **Evidence:** ASSIGNMENT: INSURANCE. In an action upon a policy of insurance in which it was set up as a defense that the insurable interest of the policy holder was transferred to another by an absolute assignment in writing after the issuance of the policy and before the loss, it was held that parol evidence was admissible to show that the assignment, absolute on its face, was in fact given for collateral security.

Ayres v. The Home Insurance Company.

2. **Insurance:** TRANSFER OF INTERESTS. A policy of insurance stipulated that the policy should be made void if the property shall be sold or conveyed, or the interest of the parties therein changed. *Held,* That a merely nominal conveyance without an actual change of interest would not avoid the policy; that an asssignment of a title bond held by the insured to a lien holder to secure him for advancing the purchase-money stipulated to be paid to the obligor in the bond by the assured, and also to secure the payment of a judgment which was a lien upon the property older than the policy of insurance, if it did not increase the interest of such assignee and lien holder and decrease the interest of the party insuring, did not change the interest of such assured so as to defeat the policy.

3. —— REPRESENTATIONS TO AN AGENT. When the local agent of an insurance company has power to pass upon applications for policies of insurance and issue policies without forwarding the application or submitting the matter to the company, and when an agent thus empowered was, when he received an application, informed of the condition of the ownership of the property and failed to take down correctly the facts stated, and the policy was thereupon issued by such agent and received by the assured in ignorance of any misstatement or omission; it was held that the company was bound by the act of the agent, and could not defeat a recovery on the ground that the agent did not correctly state in the policy the facts concerning the interest or title of the assured. *Aliter,* if the agent had been authorized only to receive and forward applications.

4. —— PROOF OF LOSS: CASE FOLLOWED, *Ayers* v. *The Hartford Fire Insurance Company,* 17 Iowa, 19, as to proof of loss, followed.

### *Appeal from Polk District Court.*

WEDNESDAY, OCTOBER 3.

INSURANCE POLICY : CHANGE OF INTEREST : PAROL EVIDENCE, &c.— On the 10th day of December, 1860, the defendant issued its policy, agreeing to insure the plaintiff, "John Ayers, against loss or damage by fire, to the amount of $5,000, on his steam flouring mill and machinery, situate," &c. ; "loss, if any, payable to B. F. Allen, Esq. (a judgment creditor of Messrs. Wm. F. Ayers & Co.), to the entire amount of his claim against Messrs. Ayers &

Co., at the time such loss may occur, and the balance, after such claim, payable to John Ayers. (Also insured $3,000 in Hartford Fire Insurance Company.)"

June 14, 1861, the mill was consumed by fire. An appeal in an action on the *Hartford* policy, above referred to, was before this court, and its decision reported in 17 Iowa, 176. See also *S. C.* again at present term.

In this case, as in that, the insurance company settled with Allen because of certain equities, but "denied all legal obligation to him or to John Ayers."

The issues in this case are substantially the same as in the *Hartford* case reported in 17 Iowa.

One Edwin Hall held the legal title to the land on which the mill stood; made his title bond to Wm. F. Ayers, July 26, 1856; in 1856 or 1857, Wm. F. Ayers & Co. erected the mill; January 10, 1860, Wm. F. Ayers (vendee named in title bond) assigned it to the plaintiff who was to pay the balance of the purchase-money due Hall; December 10, 1860, the policy in suit issued; January 21, 1861, title bond assigned by plaintiff to B. F. Allen, and was held by Allen at the date of the fire in June, 1861. These facts will be found more fully stated in the *Hartford* case (17 Iowa, 176), and to which reference is made.

The present action was brought by the plaintiff against the Home Company to recover the balance of the policy, deducting the amount paid to Allen. Verdict for the plaintiff. Defendant appeals, assigning as error certain rulings on the trial, and certain instructions given and modified.

*Finch, Clark & Rice.* for the appellant.

*Polk & Hubbell* and *J. M. Dorr* for the appellee.

DILLON, J.—I. The policy in suit contained the proviso: "that if said property shall be sold or conveyed, or the interest of the parties therein changed," * * * "this policy shall be null and void." This is not, in terms, identical with the proviso in the *Hartford* case, 17 Iowa, 176; and see *S. C.* again at present term.

<div style="margin-left:2em">1. EVI-<br>DENCE: as-<br>signment:<br>insurance.</div>

At the date of the policy, John Ayers, as the holder of the Hall title bond, had an insurable interest in the property. *Ayers* v. *Hartford Insurance Company*, 17 Iowa, 176, 181, and cases cited. A mill, worth at least $12,000, was upon the property; the debt to Hall was not due until 1862, and did not exceed about $2,000. After the policy, and before the fire, the plaintiff executed the following assignment on the title bond: "For value received, I assign all of my right, title and interest to the within bond to B. F. Allen, this January 21, 1861.

<div style="text-align:right">JOHN AYERS."</div>

The first question to be determined is this: Did the court err in allowing Allen to give parol evidence as to the purposes for which he received the assignment of the title bond?

Against defendant's objection, Allen was permitted to testify that this assignment, though absolute and unconditional in form, was, nevertheless, taken by him as collateral security for his judgment debt against W. F. Ayers & Co., and contingently for any amount he might have to advance to Hall to secure the title. The question as to the admissibility of verbal evidence for this purpose, was not decided in the *Hartford* case (See 17 Iowa, p. 183), but is now distinctly presented. The authorities bearing upon it, on either side, have been industriously collected by counsel, and patiently examined by the court. We do not propose to review them,

but simply to state the conclusion to which we have arrived. The plaintiff sues upon his policy, alleging an insurable interest in himself. The answer denies such insurable interest, and to support this denial, sets up the assignment by the plaintiff to Allen. Now, if a reply in such case was permitted by our system of pleading, the plaintiff should properly have pleaded thus: "True, I made the assignment, and true, it is absolute on its face, yet in reality it was only collateral security to Allen, etc." But the statute puts in this reply for him (Rev. Stat., § 2917; *Davenport Saving Fund and Loan Association* v. *The North American Fire Insurance Company* 16 Iowa, 74), and these facts are to be regarded as pleaded. This makes the case of *Hodges* v. *Tennessee Insurance Company* (8 N. Y. [4 Seld.], 416), exactly in point, and we approve of and follow the rule adopted by the majority of the judges in that case. See also *Chester* v. *Bank of Kingston*, 16 N. Y., 336; *Sturtevant* v. *Sturtevant*, 20 N. Y., 39; *Cousins* v. *Westcott*, 15 Iowa, 254; *Friend* v. *Beebe*, 3 G. Greene, 279; *Roberts* v. *McMahan*, 4 G. Greene, 34; *Peck* v. *Insurance Co.*, 22 Conn., 575. We are of opinion, therefore, that the court did not err in receiving parol evidence to show that the assignment of the bond to Allen, thought absolute on its face, was, in truth, given as collateral security.

II. This settled, the next question to be determined 2. INSURANCE: arises upon the proviso or condition above transfer of interest. quoted, by which the policy is made void, if the "property shall be sold, or conveyed, or *the interest of the parties therein changed.*"

Before alluding to the charge of the court upon this subject, a few additional facts should be stated. On the 15th day of October, 1858 (which was while Wm. F. Ayers held and owned the Hall title bond, and before the assignment of it to the plaintiff), Allen recovered a judg-

ment against Wm. F. Ayers & Co. for $3,864.08, at 10 per cent interest. This judgment was consequently a lien on the mill property. On the 4th of October, 1860, execution was issued on this judgment, and, on the 13th and 14th days of November, 1860 (before date of policy), certain personal property and real estate was sold on this execution, and brought within about $500 of the amount due on the judgment. Among other tracts the mill property was sold by the sheriff and bought in for the benefit of Allen, at the price of $1,500. There was testimony tending to show that Allen never got possession of the property, and that the sale was abandoned by the mutual consent of Allen and Ayers & Co., and that it was so treated at the time the policy in suit was issued, at the time the proofs of loss were made, and at the time the defendant settled with and paid Allen his proportion of the loss.

The claim of Hall for the purchase-money was, of course, a lien upon the property.

Under these circumstances, with Allen's testimony as to the purposes for which the bond was assigned to him, the observations of this court in the *Hartford* case are applicable. See 17 Iowa, 184, top. The plaintiff, notwithstanding the assignment of the bond to Allen, would still retain an interest in the property, which, in the absence of special stipulations to the contrary, would be covered by the policy. Defendants claim that the proviso or condition above quoted was a special stipulation to the contrary, which would avoid the policy. On this subject, the court, in substance, directed the jury that a mere nominal, without any actual, change of interest, would not avoid the policy; that if the bond was assigned to Allen to secure him if he paid Hall (the first lienor) and to secure him the amount of his judgment (also a lien on the property, older than the plaintiff's acquisition of title

and older than the policy), and if this did not increase Allen's right nor decrease the plaintiff's, then the plaintiff's interest was not *changed* by the assignment so as to defeat the policy; but, that it would be changed and the policy consequently avoided, if the bond was assigned to Allen to secure a greater sum than, without such assignment, he would be entitled to hold against the property. These instructions were correct in point of law, at least were sufficiently favorable to the defendant. *Ayers* v. *Hartford Insurance Company*, 17 Iowa, 176; and see generally, *Holbrook* v. —— *Insurance Company*, 1 Curt. C. C., 193.

The question of fact whether, under this assignment, Allen's rights were greater than they otherwise would have been, was settled against the defendant by the jury. With their finding we are not authorized to interfere.

III. Among the conditions of insurance is the following: "If the property be held in trust or on commission, 3 — repre- or be a leasehold or *other interest not absolute*, sentations to an agent. it must be so represented to the company, and expressed in the policy in writing; otherwise the insurance, as to such property, shall be void."

This case also differs from the *Hartford* case in the fact, that in this it is certain there was no formal *written application* for insurance. The policy, as we have seen (*vide statement*), describes the property as "*his*" (plaintiff's) "steam flouring mill;" but does not describe any more particularly the nature of his interest in the property. The case therefore presented the question, whether the interest of the plaintiff holding under title bond, which would not mature during the policy, was an "*interest not absolute*," within the meaning of the policy.

The court gave the defendants instruction that this was not an absolute interest but a contingent one, and that this notbeing expressed in the policy would, *prima facie*,

defeat the right to recover. In a case very similar to the present, the Supreme Court of Connecticut have given a different construction to a condition in a policy, literally like that above quoted. *Hough* v. *City Fire Insurance Company*, 29 Conn., 10, cited L. & B. Dig. Ins. Decis, p. 411, § 39.

But the court, in connection with the instruction last referred to, gave in substance the following: If the local agent of defendant, who took the application, was informed by the assured of the true condition of the ownership of the property, and failed, correctly to take down the facts stated, and the policy was received by the assured in ignorance of any misstatement or omission, then, if the agent had the power to pass upon, and did pass upon the risk, and issue the policy without forward-ing the application, or submitting the matter to the company, the company is bound by the act of the agent, and cannot defeat a recovery, on the ground that the agent did not correctly state in the policy the facts concerning the interest or title of the assured. But it would be otherwise (the court also instructed) if the agent only had authority to receive and forward applications, and did so receive and forward the application in this instance. These rules of law were the same as those laid down in *Ayers* v. *Hartford Insurance Company*, 17 Iowa, p. 190.

Under these instructions the jury must have found as facts, that the assured truly stated the condition of the tittle or ownership; that the local agent did not state all the facts in the policy, and that he had authority to take the risk and issue the policy, without submitting it to the company. There is no error here for which the judgment should be reversed. We give no opinion upon the question, whether the instruction of the court, that the plaintiff's interest was one "not absolute," was correct.

IV. In respect to the instructions as to the proof of loss, and what would or would not amount to a waiver *4——proof of loss: case followed.* of defective proofs, we find upon examination, that the instructions, as a whole, are not objectionable, and conform very closely to the law upon this subject as stated in *Ayers* v. *The Hartford Fire Insurance Company*, 17 Iowa, pp. 191, 192. There was certainly evidence which would warrant the jury in finding that the defendant had waived proofs *signed by the hand of the plaintiff*, and the jury having so found we are not disposed to disturb their decision.

Affirmed.

COLE, J., having been of counsel, took no part in the determination of this case.