JOHN SMITH et al., Appellees, v. NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD, CONNECTICUT, Appellant.

INSURANCE:   Reformation of Policy—Knowledge of Agent.   The
   knowledge of a soliciting agent that the insured understood that
   he was to receive a policy which would permit additional insur-
   ance will, on the issue of reformation, be imputed to the insurer,
   even though not communicated to the latter.   (See Book of Anno.,
   Vol. 1, Sec. 9002, Anno. 12 *et seq.*; Sec. 9018, Anno. 35 *et seq.*)

.Headnote 1:   26 C. J. p. 297; 32 C. J. p. 1069.

*Appeal from Montgomery District Court.*—EARL PETERS and
E. B. WOODRUFF, Judges.

FEBRUARY 16, 1926.

SUIT to reform and recover upon a fire insurance policy.
Judgment for plaintiff.   Defendant appeals.—*Affirmed.*

*Stout, Rose, Wells & Martin,* for appellant.

*Ira C. Paschal,* for appellee.

MORLING, J.—The insured, John Smith, was originally plaintiff, and will be so referred to, though the plaintiff bank, as assignee, has been substituted. The contest arises over the existence of a later policy, which defendant claims resulted in the avoidance of its policy. The plaintiff claims that, as a part of the arrangement between him and the defendant's agent, Fortune, which resulted in the issuance of the policy, the plaintiff was to have permission to take out the additional insurance.

It is apparently conceded that the policy was on a standard form, which, before it was filled out, contained the clause set out in the petition, namely:

"It is hereby agreed that the insured may obtain $—— other additional insurance in companies authorized to do business in the state of Iowa."

As filled out, however, the word "no" was substituted for the word "other," so that the policy as delivered reads:

"It is hereby agreed that the insured may obtain $—— no additional insurance in companies authorized to do business in the state of Iowa."

The policy also provided that, if the assured should thereafter procure other insurance, it should be void.

The plaintiff asks for reformation so that the policy shall read that he may obtain other insurance. The trial court granted reformation, and the first question is whether the evidence authorized that relief.

Plaintiff bought the property in 1919 of Mrs. Thompson, through Fortune. Fortune had written a former policy for Mrs. Thompson on the property. Plaintiff testifies that, about December 1, 1919, Fortune told him that the insurance would expire on December 3, 1919, and that:

"I told him I had a contract to receive a deed in March, and it was up to Mrs. Thompson to provide for the insurance; and he said he had been talking with her, and he wanted to fix up a policy that we would take over March 1st; and I informed him I was in the insurance business, and I really preferred to

write our own business. He said it would be an accommodation to him; he had considerable business for this company, and was adjusting some of their losses at the time. He did not like to lose the business, and he would consider it a personal favor if I would let him write that insurance; and I informed him there was not enough insurance anyway. He said, if I would give him permission to write this insurance, he would give me permission to go ahead and put on whatever insurance I wanted when I got the title," which was to be March 1st.

Plaintiff says that he told Fortune at this same time that he desired to take out $5,000 additional, and would take it in the Phoenix of Hartford. Another witness gives practically the same testimony.

Fortune said:

"I don't remember that Smith said anything to me, at the time I solicited him for this insurance, about his intention to take other insurance on this dwelling house. I don't think he did. I don't remember any conversation with him on that subject of taking other insurance" at that time.

Fortune says that this was first mentioned about March 1st, when the policy was delivered to plaintiff. Up to that time, Fortune held the policy in his office, "as a representative of Mrs. Thompson." He repeats:

"I have no recollection of Smith's intention to take other insurance being mentioned by him to me until about March, 1920, when I handed over this policy to John Smith himself."

The plaintiff did not sign any application for the policy with defendant, but Fortune filled out and forwarded an application, which stated that there was no other fire insurance on the property. The policy was not written in Fortune's office, but was written evidently by the general agents. Plaintiff says that, when he received possession, in March, 1920, he said something to Fortune about his intention at some time to take out other insurance. After the loss occurred, plaintiff wrote to the agents that:

"Along about March 1, 1920, I told Mr. Fortune, your agent, that I expected to take out additional insurance."

The policy sued on is for $7,000. The additional policy is for $5,000. It was stipulated that:

"The total amount of said loss and value of said building so destroyed was the sum of $8,884, and defendant's pro rata would be $5,182.33."

Mrs. Thompson's old policy was for $3,000. The general. agents, in sending the new policy to Fortune, inquired whether he was satisfied that the dwelling would "carry the amount of insurance asked for." Fortune replied that the house was modern, with oak finish in first story; that similar houses built that year were costing from $10,000 to $12,000; and that he was satisfied that it was not over-insured. He also wrote the general agents that they had no other insurance on it. It is urged that the evidence shows no more than a declaration of purpose to take additional insurance in the future; that this information was given to Fortune March 1st, while the policy was issued, and was in force, from December 3d preceding.

I.   We agree with the finding of the trial court that the policy was issued and accepted on the understanding that the plaintiff should have the privilege of obtaining additional insurance.

II.   Mrs. Thompson was the owner of the legal title. Plaintiff was the equitable owner. Fortune solicited plaintiff to take out a policy that would protect both. Plaintiff agreed to the taking out of such a policy, that should contain permission for additional insurance. Fortune knew that such was the policy that plaintiff agreed to take. Defendant issued the policy on such solicitation, and received and holds the premiums. Whether Fortune failed to communicate the condition imposed to the agent who issued the policy, or whether the agent issuing the policy knew of and disregarded the condition, is immaterial. The additional insurance clause in the form inserted was so inserted by the negligence or fraud of one or the other. In either case, it became the fraud or negligence of the defendant, and it is not material that Fortune was merely a local agent, or not a recording agent. He was the defendant's agent, through whom the policy was negotiated. The defendant was chargeable with Fortune's knowledge. *Johnson v. Farmers Ins. Co.*, 184 Iowa 630, 637; *DeBolt v. German Am. Ins. Co.*, 181 Iowa 671; *Cooper Wagon & Buggy Co. v. National Ben Franklin Ins. Co.*, 188 Iowa 425; *Fitchner & Co. v. Fidelity Mut. Fire Assn.*, 103

Iowa 276. The plaintiff was not negligent in not reading the policy. *Chismore v. Anchor Fire Ins. Co.*, 131 Iowa 180, 182; *Fitchner & Co. v. Fidelity Mut. Fire Assn.*, 103 Iowa 276, 279; *Wilson v. Anchor Fire Ins. Co.*, 143 Iowa 458. The defendant must be held to have consented to the additional insurance, and to have waived the condition against additional insurance. *Independent Sch. Dist. v. Fidelity Ins. Co.*, 113 Iowa 65; *Wensel v. Property Mut. Ins. Assn.*, 129 Iowa 295; *Johnson v. Farmers Ins. Co.*, 184 Iowa 630; *DeBolt v. German Am. Ins. Co.*, 181 Iowa 671; *Wilson v. Anchor Fire Ins. Co.*, 143 Iowa 458; *Cooper Wagon & Buggy Co. v. National Ben Franklin Ins. Co.*, 188 Iowa 425. The court properly decreed reformation. *Fitchner & Co. v. Fidelity Mut. Fire Assn.*, 103 Iowa 276; *Norem v. Iowa Imp. Mut. Ins. Assn.*, 196 Iowa 983. The cases relied upon by the defendant might be in point if the only information Fortune had was that which he received March 1st, after the policy had taken effect. The evidence, however, establishes the fact that it was one of the conditions on which the plaintiff consented to accepting defendant's policy, stated to the agent Fortune at the time, that plaintiff should have permission to take the additional $5,000 in the Phoenix. *Chismore v. Anchor Fire Ins. Co.*, 131 Iowa 180; *Scrivner v. Anchor Fire Ins. Co.*, 144 Iowa 328; *House v. Security Fire Ins. Co.*, 145 Iowa 462.

Defendant argues that the decree results in affirming the plaintiff's right to over-insure his property, contrary to public policy, and in subjecting the defendant to hazards it did not agree to. As has been shown, the agreement of the agent was the agreement of the defendant. If the taking out of the additional $5,000 would result in over-insurance, that fact might properly be considered in determining the question of fact whether the agent did agree that the policy should contain permission for the additional insurance. There is no evidence of the value of the property, unless it be the letter of the agent and the stipulation already referred to. The stipulation was apparently made for the purpose of the trial. The agent was evidently anxious to keep the insurance. There is no plea of fraud committed by plaintiff. We have given full consideration

to all these questions in arriving at the conclusion that additional insurance was to be permitted.

The judgment is—*Affirmed.*

De Graff, C. J., and Evans and Albert, JJ., concur.